**Sharonrose Cannistraci, CSBN 121827**
**Anthony M. Wise, CSBN 251864**
**CANNISTRACI LAW FIRM**
16450 Los Gatos Blvd. Suite 110
Los Gatos, CA 95032
Phone: (408) 335.7368
Fax: (408) 402.8362
Email: sharonrose@cannistracilaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| CRISTELA GOMEZ, an individual, and JESUS GOMEZ, an individual )<br><br>        Plaintiffs, )<br><br>vs. )<br><br>CITY OF SAN JOSE, a municipality; SAN JOSE POLICE DEPARTMENT, a department of a municipality; OFFICER FUKUMA, an individual; OFFICER SANTOS, an individual; OFFICER KRAUSS, an individual; SGT. MARFIA, an individual, and DOES 1-60. )<br><br>        Defendants. ) | Case No. C10-04820 HRL<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES:**<br><br>1. **§1983, §1985,  §1988: Violation of 1st, 4th, 5th, and 14th Amendments**<br>2. **BATTERY;**<br>3. **FALSE ARREST, IMPRISONMENT & MALICIOUS CRIMINAL PROSECUTION;**<br>4. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>5. **NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**<br>6. **VIOLATION OF PUBLIC POLICY;**<br>7. **CONSPIRACY**<br><br>**DEMAND FOR JURY TRIAL** |

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd • Suite 110 • Los Gatos, CA 95032
Phone: 408.335.7368 • Fax: 408.402.8362

Plaintiffs **CRISTELA** GOMEZ and JESUS GOMEZ (collectively referred to herein as "Plaintiffs") hereby complain against Defendants and each of them as follows:

## I.    JURISDICTION AND VENUE

1.    This action is brought in the United States District Court, under 42 U.S.C. § 1983 to recover damages against Defendants and each of them for violation of Plaintiffs' rights guaranteed by the FIRST, FOURTH, FIFTH, and FOURTEENTH amendments of the United States Constitution. The jurisdiction of this Court is predicated on 28 U.S.C. §§ 1331 and 1343.

2.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District. The court also has jurisdiction over the state claims herein.

## II. THE PARTIES

3.    Plaintiff Cristela Gomez is and at all times mentioned in this complaint was a citizen of the United States residing in the City of San Jose, County of Santa Clara, State of California. At the time of the allegations in this complaint, Plaintiff Cristela Gomez was a 23 year old, American born, English speaking, Hispanic young woman, who was employed as a bank teller, and is the sister of Plaintiff Jesus Gomez.

4.    Plaintiff Jesus Gomez also known as 'Jessie' Gomez is and at all times mentioned in this complaint was a citizen of the United States residing in the City of San Jose, County of Santa Clara, State of California. At the time of the allegations in this complaint, Plaintiff Jessie Gomez was a 22 year old, American born, English speaking, Hispanic man, and is the brother of Plaintiff Cristela Gomez.

5.     Plaintiffs are informed and believe and thereon allege that Defendant City of San Jose was at all times mentioned in this complaint a municipality located in the County of Santa Clara, State of California, organized and existing under the laws of the State of California, with the capacity to sue and to be sued, with a law enforcement department or division commonly referred to as San

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

Jose Police Department ("SJPD"). Defendant City of San Jose and Defendant SJPD was at all times mentioned in this complaint acting under color of state law. Defendant City of San Jose and Defendant SJPD was at all times mentioned the employer and supervisor of the officer defendants sued herein, including those sued as unknown DOE defendants, and is and was responsible and vicariously liable for the wrongful acts and omissions of its employees, officers, representatives and agents committed within the course and scope of employment and agency as alleged herein.

6.      Plaintiffs are informed and believe and thereon allege that Defendant Officer Fukuma, Badge No. 4003 is, and was at all times mentioned in this complaint, a police officer employed by Defendants City of San Jose and San Jose Police Department and at all times was acting in the course and scope of his employment and acting under color of state law and the authority invested in him by Defendants City of San Jose and San Jose Police Department. Defendant Fukuma is sued in his official and personal capacity.

7.      Plaintiffs are informed and believe and thereon allege Plaintiffs are informed and believe and thereon allege that Defendant Officer Krauss, Badge No. 4050 is, and was at all times mentioned in this complaint, a police officer employed by Defendants City of San Jose and San Jose Police Department and at all times was acting in the course and scope of his employment and acting under color of state law and the authority invested in him by Defendants City of San Jose and San Jose Police Department. Defendant Krauss is sued in his official and personal capacity.

8.      Plaintiffs are informed and believe and thereon allege that Defendant Officer Santos, Badge No. 4047 is, and was at all times mentioned in this complaint, a police officer employed by Defendants City of San Jose and San Jose Police Department and at all times was acting in the course and scope of his employment and acting under color of state law and the authority invested in him by Defendants City of San Jose and San Jose Police Department. Defendant Santos is sued in his official and personal capacity.

9.      Plaintiffs are informed and believe and thereon allege that Defendant Sgt. Marfia, Badge

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd • Suite 110 • Los Gatos, CA 95032
Phone: 408.335.7368 • Fax: 408.402.8362

No. 3254 (herein "commanding officer") is, and was at all times mentioned in this complaint, a police officer employed by Defendants City of San Jose and San Jose Police Department and at all times was acting in the course and scope of his employment and acting under color of state law and the authority invested in him by Defendants City of San Jose and San Jose Police Department and was the training, supervising and commanding officer of one or more of the named officer defendants and DOE officer defendants sued herein and was in command and control of the other officers and the scene and supervised and participated in the pre-textual criminal charges, arrest, imprisonment, criminal prosecution and preparation of related reports. Defendant Marfia is sued in his official and personal capacity.

10.     At all times relevant defendant officers and others acting in concert with them were wearing SJPD uniforms and driving in SJPD marked patrol vehicles and Plaintiffs are informed and believe that they were on duty and acting under the supervision, control or command of one of the named defendants or other unknown SJPD officers sued as DOE defendants who are somehow responsible for their acts or injuries to Plaintiffs herein.

11.     At all times herein mentioned each of the Defendants sued herein as DOES 1 through 20 were uniformed officers who incited, assisted, caused, condoned, conspired with and/or covered up the wrongs of the named officer defendants Fukuma, Santos, Kraus, and Marfia and DOES 1 through 20 and the foregoing named officer defendants and any other officers acting in concert with them shall herein be referred to as the "Defendant officers" or the "officer defendants".

12.     At all times herein mentioned each of the Defendants sued herein as DOES 21 through 60 were responsible in some unknown manner for plaintiff's injuries and damages alleged herein, including unknown individuals, entities, agencies, officers, hiring ranking supervising officers and officials responsible, for among other things, negligently hiring, training, retention, supervising, briefing, directing, ordering, enabling, controlling, causing, condoning, disciplining, participating in or failing to report or prevent the wrongful acts of the other defendants or protect plaintiffs from

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

1   injury and violation of their rights (when they had a duty to do so), or otherwise responsible for

2   other wrongful acts and omissions of themselves and/or other defendants sued herein, and/or who

3   engaged in a conspiracy with other defendants, while acting in their individual capacity, and/or their

4   official capacity within the purpose and scope of such agency or employment, and who are

5   otherwise responsible for other wrongful acts and omissions as yet unknown, and which conduct

6   was the proximate or legal cause of Plaintiffs' injuries and/or damages alleged herein.

7               **III.    PLAINTIFFS' BACKGROUND**

8   13.    On October 25, 2008, Plaintiff Cristela Gomez and her brother Jessie Gomez were raised in

9   a working class close knit Hispanic family who live on the east side of San Jose. Plaintiff Cristela

10  was a passenger in her own vehicle being driven by her quiet spoken brother and she is an eye

11  witness to the police action against her brother that is the subject of her brother's complaint herein.

12  14.    Shortly after Cristela reported to a neutral SJPD officer investigating the defendant

13  assaulting officers' use of force against her brother, informing the neutral officer that her brother

14  did not resist the assaulting officers, in retaliation one of the assaulting officers arrested Cristela at

15  the scene, without probable cause, falsely imprisoned her in the county jail, and caused her to be

16  criminally prosecuted by the District Attorney. The District Attorney ultimately dismissed the

17  criminal charges against her.

18  15.    Plaintiff Jessie Gomez is an earnest young Hispanic man with a mild manner and gentle

19  temperament who had no history of violence and no prior criminal convictions. Jessie did nothing to

20  provoke or deserve the police brutality by three SJPD officers after a traffic stop for a driving

21  infraction during a detention for a field sobriety examination.

22               **IV.    DEFENDANTS' BACKGROUND**

23  16.    All SJPD officers at the scene including the named and DOE defendants owed these two

24  young Hispanic people a special duty of care not to violate their rights or harm either of them, as

25  well as the special duty once they were detained by SJPD to protect these young people from

26

1   unlawful police action and violations of their rights.

2   17.   Plaintiffs are informed and believe that SJPD officers were under the command of a sergeant

3   who had a pattern and practice of using force against suspects detained for infractions and

4   misdemeanors and which commanding officer condoned such use by other officers he supervised.

5   18.   The times and identities of SJPD officers are derived from reports prepared by SJPD officers

6   which times and identities may or may not be correct.

7   **V.   THE TRAFFIC STOP FOR MINOR DRIVING INFRACTIONS**

8   19.   On October 25, 2008, Jessie was driving Cristela home in her car after they left a friend at

9   his house who lived on the east side of San Jose.

10   20.   According to records prepared by SJPD, at about 3:45 am on October 25, 2008, near the

11   intersection of Maybury/Salt Lake Drive in San Jose, CA, an armed uniformed SJPD officer,

12   Fukuma while driving a marked patrol car, observed the vehicle being driven by Jessie; at about

13   3:46 am, the officer initiated a traffic stop for alleged minor driving infractions. Jessie followed the

14   officer's signal and brought his sister's car to stop.

15   21.   The armed officer parked his patrol car some distance behind Cristela's car and walked over

16   to the passenger side of her car. The officer's tone and attitude was accusatory. Jessie was

17   cooperative and responded to the officer's questions.  Jessie and Cristela were cooperative and gave

18   the armed officer their California IDs from the Department of Motor Vehicles.

19   22.   Officer Fukuma reports that "I approached the vehicle on the passenger's side and made

20   contact with the driver [Jessie] and the passenger [Cristela]."  In the aftermath of the assault that

21   followed on an unarmed young man pulled over for a minor traffic infraction, officer Fukuma made

22   misleading statements in his police report, claiming that before he asked Jessie to exit his vehicle

23   officer Fukuma could allegedly smell the odor of alcohol on Jessie's breath and claiming the officer

24   conducted horizontal nystagmus test from where officer Fukuma stood *outside the passenger* side of

25   the car next to Cristela-- several feet away from where Jessie was seated in the driver's seat. The

26

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd • Suite 110 • Los Gatos, CA 95032
Phone: 408.335.7368 • Fax: 408.402.8362

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

1  officer reported that based on the foregoing alleged symptoms he had Jessie exit the vehicle to

2  perform FSE (field sobriety examination).

3  23.    Jessie exited the car, emptied his pockets of his cell phone and watch. As he tossed his cell

4  phone inside the car, he heard the officer say something behind him. Jessie did not understand the

5  officer, and asked "Excuse me?"  The armed officer said words to the effect "You fucking heard

6  me." From where Cristela was seated in the front passenger seat of her car, worried for her brother

7  Cristela dialed a friend who lived nearby to let him know what was happening. She did not speak on

8  the cell phone and sat quiet so her friend could hear what was happening.

9  24.    Outside the car, Jessie was shivering in the cold night air as the officer spoke to him. The

10  officer told Jessie to put his hands behind his back, which Jessie did, and the officer demonstrated to

11  Jessie how to interlock his fingers, by the officer interlocking his own fingers in front of the

12  officer's body. Like the officer demonstrated, Jessie interlocked his own fingers in front of Jessie's

13  own body. The officer gave Jessie a look and said "Behind your back." Jessie interlocked his own

14  fingers behind his own back. The officer stood behind Jessie, firmly gripped Jessie's interlocked

15  fingers behind his back and patted Jessie's body down, asking Jessie if Jessie had any weapons or

16  anything sharp in his pockets. Jessie was unarmed and replied, 'no.'

17  25.    Officer Fukuma reported that "I conducted a cursory search for weapons" and then the

18  officer placed himself approximately 7' away from Jessie and proceeding to give him instructions.

19                    **VI.    ASSAULT BY OFFICER FUKUMA**

20  26.    According to records prepared by officer Fukuma, at 3:46 am [moments after initiating the

21  stop] officer Fukuma escalated to the use of physical force against Jessie.

22  27.    In the cold night air Jessie shivered, and the officer painfully bent Jessie's arms upwards

23  behind his back in the wrong direction, ordering 'don't resist me', while the officer forced Jessie's

24  body in the opposite direction downwards; all the while Jessie repeatedly plead "I'm not resisting!"

25  28.    The officer then threw Jessie to the hard pavement in a violent takedown. Jessie struck the

26

left side of his face on the hard pavement. The officer knelt on the right side of Jessie's face, pressing the left side of his injured face into the pavement. Jessie could not breathe with the officer on top of him pressing his head into the pavement.

29.     From inside the car Cristela heard the officer yelling the "F" word and Jessie repeatedly yelling in pain "I'm not resisting!" and looked outside the window and observed her younger brother lying unresisting on the ground with the officer kneeling on top of Jessie, holding Jessie's hands behind Jessie's back. From inside the car, Cristela asked the officer what he was doing. The officer ordered her to hang up her cell phone, which she did. The officer instructed Jessie to speak with his sister, released the pressure and Jessie turned his head to try and catch his breath and tried to reassure his sister but he then blacked out and lost consciousness.

30.     According to the specific facts reported by officer Fukuma, the officer conducted a body search of Jessie for weapons, without incident or resistance; after the body search, officer Fukuma stood apart from Jessie and proceeded to give Jessie a series of verbal instructions as to where to stand and how to behave; officer Fukuma reported Jessie's responses were allegedly 'slow' and described Jessie as allegedly 'incoherent' and exhibiting other alleged symptoms of alcohol intoxication; officer Fukuma documented that Jessie had 'difficulty' following the officer's verbal instructions, but was able to comply after the officer repeated the verbal instructions several times; 1 minute into the field sobriety detention, officer Fukuma initiated a control hold, grabbing Jessie's arm and the fingers of his other hand, to effect a misdemeanor arrest of a compliant suspect for driving under the influence; in response to officer Fukuma's control hold, Jessie allegedly 'immediately' 'flexed', pulled away and complained of pain inflicted by the officer's painful control hold; officer Fukuma initiated a takedown using body weapons and knelt on Jessie's head and handcuffed Jessie as he lay on the ground; officer Fukuma ordered Cristela to hang up her cell phone as she sat inside her car on her phone, confirming Officer Fukuma knew Cristela was able to care for herself and call someone. Officer Fukuma's use of force report indicates his control hold

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd • Suite 110 • Los Gatos, CA 95032
Phone: 408.335.7368 • Fax: 408.402.8362

1   caused Jessie to complain of pain and Jessie was injured during "Person Search (Not handcuffed)";

2   31.   Officer Fukuma does not report his own observations of the assaults by officers Santos or

3   Krauss that followed Fukuma's premature violence against an unarmed impaired young man.

### VII.   ASSAULT BY OFFICER SANTOS

5   32.   According to records prepared by defendant officer Santos, officer Dorn arrived at the scene

6   and was speaking to Cristela who was sitting on the curb when officer Santos responded to the

7   scene at 3:49 am and observed officer Fukuma kneeling over Jessie who was laying in a prone

8   position on the ground wearing handcuffs as officer Santos approached Jessie to assist officer

9   Fukuma with the detention.

10   33.   When Jessie awoke he was laying face down with his hands handcuffed behind his back and

11   he was being lifted to his feet by two armed officers, one on each side of Jessie; blood was dripping

12   from Jessie's face and a pool of his blood was pooling on the street. Other armed officers were

13   present. Dazed and trying to understand what happened, Jessie asked the officers: "I was bleeding?"

14   The two officers roughly walked him over to the rear of the patrol car and threw Jessie face down

15   on the trunk of the patrol car. Jessie struck his head again, causing further injury. As the officers

16   pressed him down half-prone on the trunk, Jessie had trouble catching his breath; he heard one

17   officer saying, "You're going down, mother fucker". Jessie felt something strike the top of his head

18   and he blacked out again.

19   34.   According to officer Santos' report, after the third time Jessie lifted his head off of the trunk

20   of the patrol car and the officer told him to keep it down, officer Santos "elevated J. Gomez's left

21   arm and I swept his left leg from beneath him with my left leg. J. Gomez **fell facedown**, to the

22   pavement, **in an uncontrolled takedown**. I placed my left knee on J. Gomez upper back and I

23   applied pressure downward to keep him from turning into me again."

24   35.   Officer Santos' police report omits any mention of Jessie's injuries and bleeding. Other

25   records prepared by officer Santos deny causing Jessie injury. Officer Santos' fails to report officer

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd • Suite 110 • Los Gatos, CA 95032
Phone: 408.335.7368 • Fax: 408.402.8362

1    Krauss striking Jessie with a closed fist.

2    ## VIII.   ASSAULT BY OFFICER KRAUSS

3    36.    According to records prepared by officer Kraus, at 3:53 am, officer Krauss arrived at the

4    scene and from a distance of about 50 feet away observed officer Fukuma and officer Santos

5    holding Jessie who was yelling. Cristela was still seated in her car. Officer Krauss alleges he walked

6    over to Jessie. Officer Krauss describes that he used a 'closed fist strike to the right side of the

7    suspect's face" and a 'control hold' on Jessie's right arm. Officer Kraus' police report does not

8    mention Jessie's bloody face or injuries. However, other records prepared by officer Krauss

9    acknowledge that officer Krauss caused Jessie injury during officer Kraus' use of force.

10   ## IX.   JESSIE'S VISIBLE INJURIES AT THE SCENE

11   37.    When Jessie came back to consciousness the next thing Jessie was aware of was his eye was

12   swollen nearly shut and he couldn't see very well. The blood on the left side of his face was

13   beginning to dry. There was blood on the patrol car from the officer's assault. A tow truck was at

14   the scene. His sister was sitting on the sidewalk. Jessie was sobbing and worried about his sister's

15   safety. Jessie was shivering in the cold. He heard an officer tell the other officers to get him inside

16   the patrol car because he was freezing.

17   38.    Officer Fukuma reported "I observed blood coming from the suspect's nose and his left eye

18   begin to swell. Fire/AMR was requested to provide evaluation and treatment." According to officer

19   Santos' report, other SJPD officers arrived on scene and assisted him to place Jessie in the patrol

20   vehicle. According to officer Fukuma, Sgt. Marfia was the supervising officer at the scene.

21   39.    The pool of blood at the scene and blood on Jessie's face was visible to all officers present.

22   40.    An officer photographed Jessie's face while he was inside the patrol car.

23   41.    Paramedics responded to the scene and treated Jessie's injuries while he was inside the

24   patrol car by wrapping bandages and an ice pack around his bleeding head.

25   42.    Jessie's visible injuries at the scene including a bloody nose and face, abrasions on his

26

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

forehead, brow, nose, beneath his chin, and behind his ear.

43.     Officer Fukuma's police report documents that the county nurse at the jail refused to admit Jessie and required officer Fukuma to take Jessie to the hospital, and at the hospital the doctors diagnosed a head facial fracture: 'left orbital wall and floor fx [fracture]'.

44.     The acts and omissions of defendants Fukuma, Santos and Krauss were the proximate cause and a substantial contributing factor that caused Jessie's bodily injury and pain and suffering, including from injuries to his head, forehead, brow, nose, beneath his chin, behind his ear, knee, ankle, arm, elbow, neck and back during the police detention and assault as well as emotional distress and trauma that Jessie suffered from the assaults as well as from the false charges that the assaulting officers caused to be brought against him and his sister.

## X.     CRISTELA'S DETENTION, FALSE ARREST & IMPRISONMENT

45.     In the aftermath of the swift police assault on her brother and ensuing investigation of the officers' use of force against an unarmed young Hispanic man, Cristela remained seated in her car.

46.     Plaintiffs are informed and believe that on or about or after 3:59 pm, a SJPD officer Dorn asked Cristela to exit her car and sit on the curb. The neutral officer spoke to her face to face and asked her for her identification. Cristela informed the officer that she had given her I.D. to the first officer. Cristela exited her vehicle and sat on the curb and was cooperative and compliant during the detention. The neutral officer stood nearby Cristela and spoke to her during the detention. Cristela had committed no crime and was an eye witness to the police assault.  The neutral officer who detained her throughout the ensuing investigation of SJPD's use of force against her unarmed young bother did not handcuff Cristela or arrest her.

47.     During the detention and while Jessie was in police custody, an unknown SJPD officer began to search the interior compartments and spaces of Cristela's car. Cristela objected to the search of her vehicle. Despite her objection, SJPD continued to conduct a search of the interior of her vehicle without a warrant or probable cause to search her vehicle for evidence of a crime.

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

1   Plaintiffs are informed and believe that the officer conducting the warrantless search did not seize

2   any evidence. The officer conducting the illegal search did not handcuff Cristela or arrest her.

3   48.      According to reports prepared by SJPD, at 3:49 am, officer Lawrence responded to the scene

4   after Jessie was under arrest and obtained a recorded statement from Cristela documented in his

5   police report as follows:

6   "Gomez stated that her brother, Jesus Gomez was driving the car and that the officer
        had pulled him over. She stated that the officer asked for identification and then
7       asked for Jesus to get out of the car. She called a friend on her phone and then heard
        her brother yelling and the officer saying the "F" word. She said her brother was on
8       the ground when she looked out the window and the officer told her to get off the
        phone which she did. She looked out the car window and **saw her brother on the**
9       **ground and the officer on top of him. She said she knows her brother was not**
        **resisting** and the next thing she knew there were a lot of police here." (emphasis
10      added)

11  49.      Officer Lawrence spoke with Cristela face to face, took a statement from her that was

12  coherent and clearly reported that her brother was <u>not resisting the officer</u>. Cristela had committed

13  no crime and the neutral investigating officer Lawrence did not handcuff Cristela or arrest her

14  during his investigation. A review of officer Lawrence's report confirms Cristela did not exhibit any

15  objective signs of intoxication or of being unable to care for herself.

16  50.      During the course of the traffic stop and detention many SJPD officers spoke to Cristela and

17  asked for her I.D. Cristela advised the officers that the first officer had taken her I.D. Cristela had

18  committed no crime. None of the SJPD officers who spoke to her handcuffed or arrested her.

19  51.      Plaintiffs are informed and believe that in response to Cristela's cell phone call, her friend

20  called her parents and both her friend and her parents arrived at the scene while Cristela and Jessie

21  were being detained by SJPD officers.

22  52.      Plaintiffs are informed and believe that when her friend arrived at the scene, he spoke with

23  SJPD and requested that he be allowed to take Cristela home and SJPD denied her friend's request

24  to take her home.

25  53.      Plaintiffs are informed and believe that when Cristela's parents arrived at the scene her

26

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

1  father spoke to SJPD and requested that her parents be allowed to take their daughter home and

2  SJPD denied her father's request to drive her home.

3  54.     While Cristela was still seated at the curb in the company of the neutral officer who asked

4  her to exit her car, defendant officer Santos walked up to Cristela and ordered her to stand up and

5  turn around with her back to him, which she did, and defendant Santos handcuffed her and escorted

6  her to his patrol car, seated her inside the back seat of his patrol car with the door open, and walked

7  away leaving her unattended in handcuffs in the back seat of the patrol car.

8  55.     Plaintiffs are informed and believe that during the detention, Cristela's friend spoke a

9  second time with SJPD and offered to drive Cristela's car home rather than have it towed away.

10  SJPD denied her friend's request.

11  56.     Defendant officer Santos returned to where Cristela was seated in the rear of the patrol car

12  with the car door open and officer Santos pointed to Cristela's mother and asked Cristela words to

13  the effect, "Who's that?"  Cristela replied "That's my mom". As soon as Cristela identified the

14  woman at the scene as Cristela's mother, defendant Santos immediately closed the rear door of his

15  patrol car, walked over to the driver's side, climbed behind the wheel, and drove away from the

16  scene with Cristela in his patrol car. As Santos pulled away, Cristela observed her father also at the

17  scene speaking with SJPD officers.

18  57.     Officer Santos falsely arrested Cristela, an eye witness to police brutality, preparing a false

19  and misleading police report that omitted material facts including that her mother was at the scene

20  and available to take her home, and maliciously caused Cristela to be falsely imprisoned in the

21  county jail and criminally prosecuted by the District Attorney for a crime she did not commit and

22  for which officer Santos did not have probable cause to believe she had committed, namely for the

23  officer's fabricated charge of an alleged violation of Penal Code Section 647(f), being allegedly

24  drunk in public allegedly unable to care for herself.

25  58.     Cristela suffered emotional distress from the assault on her younger brother as well as from

26

Amended Complaint for Damages                                    13

1   the false charges that the assaulting officers caused to be brought against her and her younger

2   brother.

3                   **XI.    JESSIE'S ARREST & DELAYED MEDICAL TREATMENT**

4   59.     Instead of taking Jessie directly to the hospital for medical treatment for his visible bloody

5   head wound wrapped in bandages per SJPD policy, defendant Fukuma drove Jessie to the AIB

6   (alcohol investigation bureau) for a blood draw at 4:55 am. The technologist documented that

7   Jessie's speech was "slurred" and his coordination and balance were "impaired". Otherwise, the

8   technologist omitted to mention Jessie's injuries or bandages.

9   60.     Instead of taking Jessie directly to the hospital for medical treatment after the blood draw at

10  the AIB, officer Fukuma drove Jessie to the jail to attempt to book him for a DUI. The nurse at the

11  county jail cut Jessie's bandages from around his head, observed Jessie's injuries and head wound

12  and said the officer needed to take Jessie to the hospital.  Officer Fukuma argued with the nurse that

13  Jessie had been cleared at the scene for booking. The nurse said there is a lot of blood and we do not

14  know where it is coming from and refused to admit Jessie to the jail.

15  61.     Officer Fukuma escorted Jessie to the emergency room at Regional Medical Center of San

16  Jose. At the hospital, officer Fukuma handcuffed Jessie to his hospital bed and was at Jessie's

17  bedside or nearby while Jessie was examined by medical personnel who documented how Jessie

18  reported he was assaulted by SJPD and his injuries:

19              • "TAKEN DOWN BY COPS".
            • "The patient sustained multiple blows."
20          • "This is an alleged assault."
            • "Occurred on the street."
21          •"The patient sustained a blow to the head and had uncertain duration loss of
22             consciousness."
            •"Facial pain after trauma."
23          • Patient in "mild distress".

24  62.     Jessie's report of a police assault was not documented by officer Fukuma.

25

26

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

63.     The medical records list Jessie's injuries: "He has facial swelling and abrasions present and there is superficial lacerations. "Facial CT shows left orbital wall and floor fx." "There is left periorbital soft tissue swelling … Fractures of the medial wall left orbit …" Plaintiff complained of "Neck pain after injury". The doctor ordered a cervical spine CAT scan to "Rule out fracture" and a CAT scan of Jessie's head. The clinical impression was Jessie's facial bones had been fractured during the assault: "Head injury. Facial fracture (LEFT ORBITAL WALL AND FACE).   The Emergency Room doctor prescribed pain medication Vicodin for Jessie's injuries and the doctor referred Jessie to a 'plastic surgeon'.

64.     Jessie was discharged from the hospital into police custody. After Jessie was diagnosed with a fractured skull, a SJPD police escort escorted Jessie to the county jail and booked Jessie for a fabricated alleged violation of Penal Code Section 148(a)(1), delay/obstruct an officer, as well as for driving under the influence, a violation of Vehicle Code Section 23152(b).

65.     Jessie had additional medical treatment and therapy following the police assault and incurred substantial related medical expenses as a result of the police assault in an amount subject to proof.

## XII.   FABRICATED CRIMINAL CHARGES

66.     Pursuant to SJPD policy, procedure and practice, officer Santos and his supervising officer(s) including Sgt. Marfia and DOES 1 through 10 caused Cristela to be falsely arrested, jailed, and criminally prosecuted by the District Attorney for a fabricated charge of allegedly violating Penal Code Section 647(f), drunk in public, a crime she did not commit and for which there was no probable cause to believe she had committed the crime.

67.     As Cristela was innocent, she refused to plead guilty and hired defense counsel to defend her in the criminal action. The District Attorney dismissed the criminal complaint in the interest of justice. Cristela incurred attorneys' fees to defend the criminal charge fabricated by defendant Santos.

68.     Pursuant to SJPD policy, procedure and practice, Officer Fukuma and his supervising officers including Sgt. Marfia and DOES 1-10 caused Jessie to be falsely arrested, jailed and criminally prosecuted by the District Attorney for a fabricated alleged violation of Penal Code Section 148(a)(1), without probable cause and to cover up SJPD officers' unjustified use of force against an unarmed man. Jessie was also prosecuted for driving under the influence, a violation of Vehicle Code Section 23152(b).

69.     As Jessie was innocent of the fabricated charge, Jessie refused to plead guilty to Penal Code Section 148(a)(1) 'delay/obstruct' and hired defense counsel to defend him in the criminal action. Jessie offered to plead no contest to Vehicle Code Section 23152(b) in exchange for a dismissal of Section 148 charge.

70.     Initially, the District Attorney rejected Jessie's offer and Jessie was forced to defend the fabricated charge to prove his innocence and invoked his right to a jury trial. Ultimately, the District Attorney dismissed the fabricated Section 148 charge and accepted Jessie's voluntary plea of no contest to a violation of Vehicle Code Section 23152(b). Jessie incurred attorneys' fees to defend a fabricated criminal charge.

## XIII.  DAMAGES

71.     In the aftermath of police brutality, Jessie continued to suffer general and special damages from physical and mental trauma inflicted by the defendant officers, including bodily injury, pain, suffering, post traumatic distress, mental anguish, depression, worry, anxiety, shame and fear and has incurred related medical expenses, therapy, wage loss and attorneys' fees in the criminal and civil action.

72.     Cristela suffered general and special damages including having her vehicle towed, attorneys' fees in the criminal and civil action and emotional distress from the police brutality against her younger brother and her own imprisonment and criminal prosecution for a crime she did not commit.

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd • Suite 110 • Los Gatos, CA 95032
Phone: 408.335.7368 • Fax: 408.402.8362

## XIV.   ADMISSIONS IN SJPD REPORTS

Plaintiffs are informed and believe as follows:

73.     No officer was threatened, according to SJPD reports.

74.     No officer was assaulted, according to SJPD reports.

75.     No officer was in danger, according to SJPD reports.

76.     No officer was injured, according to SJPD reports.

77.     The arresting officer's reports, when read together, establish officer Fukuma prematurely aborted a field sobriety examination of a compliant impaired misdemeanor suspect to initiate a painful control hold to effect a misdemeanor DUI arrest, the only crime for which probable cause existed to arrest Jessie, and then violently took him down, injuring him.

78.     Three SJPD officers in turn assaulted Jessie. Two of the three assaults occurred <u>after</u> Jessie was in handcuffs and <u>after</u> Jessie was injured by officer Fukuma and blacked out.

## XV.    CITY OF SAN JOSE POLICY TAINTS USE OF SJPD FORCE REPORTS

79.     It is the policy, procedure and practice of the City of San Jose and SJPD to require all officers who are guilty of using force against a person to fill out a form entitled '*SJPD* Force Response Reports'. The form on its face requires each officer to characterize himself as an alleged victim of alleged battery or delay or obstruction by the person who the officer assaulted.

**"Booking charges: (Select all that apply that were committed against an officer only)"**

**"□ 69 PC   □148 PC   □ 241 PC   □ 243 PC   □245 PC   □Other ___"**

80.     For example, officer Fukuma reports in his *SJPD* Force Response Report: "Primary Officer Activity immediately Prior to Force Response" was "Person Search (Not handcuffed)" He checked the box booking charges: 148 PC.  However, officer Fukuma's Narrative in his police report confirms the officer initiated force at a time after the body search was over and after he aborted the field sobriety examination wherein Jessie was compliant, attempting to follow the officer's repeated instructions as to which way to face, placement of his hands and feet, and how to behave, but slow

to perform.

81.     Officer Kraus' police report states that he was responding to an 'assault' on an officer and his SJPD Force Response Report states that the incident type was "Assault on Officer". However, Kraus' report acknowledges that he himself was not assaulted or injured, and a review of the other officers' reports and *SJPD* Force Response Report confirm that no officer was assaulted by Jessie.

82.     *SJPD* Force Response Report taints law enforcement's duty to truthfully report what occurred during an officer's use of force by coaching, prompting and reminding the officer using force to characterize (or mischaracterize) the use of force as a 'response' and to book the injured person who the officer assaulted for a crime allegedly "committed against an officer only" and even goes so far as to suggest a list of pretextual crimes for the officer to choose among so that the injured person is criminally prosecuted.

83.     Pursuant to the foregoing policy, practice and procedure of the City of San Jose, the assaulting defendant officers herein filled out SJPD forms that mischaracterized the facts and falsely portray the armed officers as alleged victims to attempt to justify their inexcusable use of force against an unarmed impaired injured young man.

84.     In bad faith, the defendant officers went even further and included false and misleading statements in their reports mischaracterizing Jessie's cries of pain as allegedly being combative or uncooperative.

85.     In bad faith all defendants caused and allowed Jessie to be criminally prosecuted for the pretextual alleged violation of Penal Code Section 148(a)(1) based on their false or misleading statements in their reports.

86.     Pursuant to a tacit or accepted SJPD policy, practice or procedure to cover-up police brutality including witness intimidation, in bad faith one of the assaulting officers took custody of Cristela Gomez from a neutral officer and falsely arrested and imprisoned her on a pretextual charge of allegedly being drunk in public and unable to care for herself, and then created a false and

misleading police report that omitted material facts that would establish that SJPD lacked probable cause to arrest her, including the fact that in response to her call for help, her friend as well as both of her parents were present at the scene offering to take her home and SJPD had expressly denied each of their requests to take her home.

87.    Sergeant Marfia reviewed and approved the assaulting officers' contradictory and inconsistent reports forwarded to the District Attorney for criminal prosecution of Jessie for PC 148(a)(1), delay/obstruct an officer, as well as a violation of Vehicle Code 23152(b) and Cristela for an alleged PC 647(f), drunk in public.

## XVI.   SYSTEMIC CIVIL RIGHTS VIOLATIONS IN SJPD

Plaintiffs are informed and believe and allege as follows:

88.    Plaintiffs are informed and believe that during the last ten years SJPD officers have engaged in a pattern and practice of racial profiling and disparate treatment of minorities (including young Hispanics) in San Jose, which unlawful activities and systemic civil rights violations include targeting minorities or who are stopped or detained or arrested in their vehicles in San Jose.

89.    SJPD's racial profiling and disparate treatment include stopping, detaining and/or arresting minorities without sufficient cause or on an alleged minor infraction and then harassing and demeaning minorities, questioning minorities, searching minorities, searching vehicles driven by minorities, handcuffing minorities, using excessive force, arresting minorities based on trumped up charges, falsifying police reports and causing minorities to be prosecuted for alleged crimes that were not committed and for which there was insufficient evidence or probable cause.

90.    Defendants SJPD and City of San Jose have received claims and citizen complaints from Plaintiffs and others about misconduct of SJPD officers, which claims and citizen complaints SJPD ignored, refused and/or failed to investigate.

91.    Defendants City of San Jose and SJPD have improperly and negligently hired, trained, retained, supervised and allowed defendant officers to maliciously cause pretextual criminal charges

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

to be filed and maintained against Plaintiffs under the facts and circumstances of this case.

92.    Plaintiffs are informed and believe including but not limited to based on a November 1, 2009 feature by the San Jose Mercury News wherein it reviewed more than half of the criminal cases filed in 2008 in which resisting arrest against SJPD was the primary charge:

- Most resisting arrest cases involve force by officers

- Many start as minor infractions such as jaywalking

- 82 percent involve people of color

- The DA declines to prosecute many SJPD cases

- Expert says cases examined suggest cops' force excessive

- Independent auditor finds merit in complaints police reject

- Seventy percent (70%) of resisting arrest cases involved force.

- Zero percent (0%) force complaints "sustained" by the S.J. Police in 2008.

- San Jose charges more people with resisting arrest, compared with its population, than any other major California city, and that a disproportionate number of those charged are Latino residents.

- State and county statistics show San Jose police charge people with resisting arrest, as the primary charge, three times a day on average.

- Around the nation, many departments closely monitor cases of resisting arrest because of a concern that the loosely defined crime is a "cover charge" used by errant cops to justify unnecessary force.  San Jose police officials last month said, in response to Mercury News questions, that they were instituting a policy to begin tracking such arrests.

- The city's Independent Police Auditor disagreed with police findings in 25 of the 99 use-of-force cases it reviewed last year.

- The district attorney's office, which files charges in about eight of every 10 Santa Clara

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

County arrests, rejects cases at an unusually high rate when the crime is resisting arrest and the department involved is San Jose police.  More than one-third of the time, the district attorney declined to file charges – a number sharply higher than the rate when other county police agencies bring a complaint of resisting arrest, according to statistics provided by the office.

- When defendants consult a lawyer and challenge resisting arrest charges brought by San Jose police, they often succeed.  Defendants who hired lawyers and contested their cases managed to win outright dismissal or at least reduction of the resisting arrest charge nearly half the time.

93.   Plaintiffs are further informed and believe based on a December 27, 2009 feature by the San Jose Mercury News, the Mercury News "identified a small number of San Jose police officers who repeatedly used force in resisting-arrest cases in a one-year period ending in October 2008." Defendant Sergeant John Marfia was identified in that group.  The feature claims that Defendant Marfia used force against five people with the primary tactic used being physical control, body weapon, and takedowns.  The feature also shows that Defendant Marfia was accused of excess force or creating a false report in at least two instances, and filing a false report in a case of force used by other officers. "In July 2007, San Jose police officer John Marfia knocked Camille Monet Fisher to the floor of a downtown parking garage, smashing her face into the asphalt.  Two weeks later, she would learn a fetus she was carrying was dead." "In October 2007, Marfia struck Carlos Duran with both hands in the chest, knocked him down, and then pinned his head to the pavement." "In November 2007, Marfia knocked Hai Tran to the ground, and then punched a companion who he said tried to intercede." All three were booked on charges of resisting arrest and all three suspects won their criminal cases.

94.   Plaintiff is also informed and believes based on the December 2009 Mercury News feature also found:

- SJPD does not keep systematic track of which officers are involved in repeated uses of force
- SJPD did not monitor which officers repeatedly take people into custody when the main crime is resisting arrest until October 2009, shortly after a reporter first asked if such incidents were tracked.
- Such tracking is commonplace in other cities, as a way to identify officers who may need more training, supervision or discipline.
- The identity of officers who use force is a matter guarded by the SJPD.
- Defendant Marfia is named in two pending federal lawsuits alleging excessive force.
- Sam Walker, an expert in police monitoring systems, at the University of Nebraska believes the number of incidents of arrests for public drunkenness and resisting arrest, and the instances of force in those cases, revealed "a special set of problems" in San Jose, in which officers routinely end up using force in unexceptional situations.

## XVII. GOVERNMENT TORT CLAIM

95.     On or about April 21, 2009 Plaintiffs hand-delivered claims to Defendant City of San Jose through its City Clerk for the injuries, disability, losses, and damages suffered and incurred by them by reason of the above-described occurrence involving the SJPD police officers Fukuma, Santos, Krauss, Marfia, Lawrence, Dorn, and Blackerby involved in the attack on Plaintiffs on Maybury Road and the ensuing false arrests and imprisonment, in compliance with the requirements of Govt. Code § 905. A copy of the respective claims are attached hereto as *Exhibit A* and *Exhibit B* and made a part hereof.

96.     On or about April 23, 2009, Defendant City of San Jose provided notices to Plaintiffs stating that their claims failed to comply substantially with the requirements of California Government Code Sections 910 and 910.2. *Exhibit C* and *Exhibit D*  Plaintiffs provided Defendant City of San Jose through its Office of the City Attorney amended claims pursuant to Gov. Code 910.6 on or

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

about April 29, 2009.  A copy of the respective amended claims are attached here as *Exhibit E* and *Exhibit F* and made a part hereof.

97.     The City of San Jose has failed or refused to act upon the claims or amended claims within the time limits of Gov. Code Section 912.4, and had not provided written notice of any action or inaction on the amended claims as required by Gov. Code Section 913.

**FIRST CLAIM**
**Violations of 1st, 4th, 5th, and 14th Amendments**
**42 U.S.C. §1983, §1985, and §1988**
**(Against All Named Defendants & DOE Defendants)**

98.     The aforementioned allegations, and each of them, are incorporated into this claim, as though set forth in full herein.

99.     The above facts establish that defendants and each of them during the traffic stop, detention, arrest, use of force investigation, incarceration, and/or criminal prosecution violated Cristela and Jessie's constitutional and civil rights as guaranteed by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

100.    The rights guaranteed and violated include a person's right to bodily integrity, personal freedom, dignity, non-interference with a property interest, equal protection, due process, speak freely to officers including questioning and reporting their use of force without reprisal or retaliation, report officers for their wrongs without reprisal or retaliation, to object to their conduct without reprisal or retaliation, be free from unreasonable or warrantless searches and seizures, not be subjected to an arrest, imprisonment or criminal prosecution based on false or misleading statements in reports or incomplete reports that omit material exculpatory evidence that officers failed to document to attempt to justify their use of force or support fabricated charges, be free of the use of excessive or unreasonable force against their person, not be battered by officers who owed a special duty of care to protect plaintiffs while in police custody, receive prompt and adequate medical attention while in police custody due to injuries inflicted by the arresting officers,

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

1   be free of coercive or retaliatory or discriminatory police practices including racial discrimination

2   and profiling and denial of equal protection under the law including receiving the same treatment as

3   Caucasian women and men receive under the same or similar circumstances.

4   101.   Municipal governments may be liable for the constitutionally-based wrongs of their

5   employees acting under color of law and pursuant to an official policy, practice or procedure.

6   102.   In acting as alleged in this complaint, Defendants Fukuma, Santos, Krauss, Marfia, and

7   DOES 1 through 30 and each of them acted under color of law and within the course and scope of

8   their employment and pursuant to the policies, customs, procedures, training, directions, and police

9   practices implemented, accepted, tolerated, condoned or ratified by Defendants City of San Jose and

10  San Jose Police Department, including use of force and police brutality against unarmed suspects

11  detained for infractions or misdemeanors, fabrication of criminal charges portraying the officer as

12  the victim to attempt to state a basis for the use of force, false arrest and imprisonment, and other

13  violations of Plaintiffs' civil rights as alleged herein

14  103.   The individual officer defendants and each of them acted knowingly, willfully, maliciously,

15  in bad faith, and/or with reckless and callous disregard for the rights and safety of Plaintiffs in

16  violating Plaintiffs' civil and constitutional rights as described above, before, during and after the

17  improper detentions and false arrests and malicious prosecutions that are the subject of the

18  complaint.

19  104.   The supervising and ranking SJPD officers including DOES 1 to 30 responsible for

20  supervising and ordering the arresting officers did negligently and personally (and in their capacity

21  as agents and employees of Defendants City of San Jose and SJPD) hire, train, direct, order,

22  supervise, retain, investigate, and discipline the name officer defendants, and otherwise participate

23  in or contribute to the violations of the arresting officers as alleged herein, which separate acts and

24  omissions were the proximate cause of Plaintiff's injuries and damages alleged herein.

25  105.   As a direct and proximate result of Defendants' acts and omissions described in this

26

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

1  complaint, Plaintiff Jessie Gomez has suffered and been subjected to bodily injury, pain and

2  suffering, mental anguish, public and private humiliation and shame, fear, worry, embarrassment,

3  depression, apprehension, demeaning incarceration procedures, emotional distress, loss of pride,

4  damage to her good name and reputation, falsely and publicly accused of crimes he did not commit,

5  loss of liberty and freedom, fear of conviction, fear of future incarceration for crimes he did not

6  commit, and deprivation of federally protected constitutional and civil rights, and chilling of the

7  exercise of his rights, including reporting the arresting officers, as well as the stigma of a permanent

8  criminal arrest record and false criminal history now ascribed to him for allegedly assaulting and

9  resisting a police officer, and falsely labeling him a potential threat to officers who may stop or

10  detain her in the future, which false charges are a matter of public record, and general and special

11  damages, including legal and medical expenses subject to proof at trial.

12  106.   As a direct and proximate result of Defendants' acts and omissions described in this

13  complaint, Plaintiff Cristela Gomez has suffered and been subjected to fear for her brother, mental

14  anguish, public and private humiliation and shame, fear, worry, embarrassment, depression,

15  apprehension, demeaning incarceration procedures, emotional distress, loss of pride, falsely and

16  publicly accused of crimes she did not commit, loss of liberty and freedom, worry about conviction

17  for a crime she did not commit, concern about future incarceration for a crime she did not commit,

18  and deprivation of federally protected constitutional and civil rights, and chilling of the exercise of

19  his rights, and general and special damages, including legal and medical expenses subject to proof

20  at trial.

21  107.   As a direct and proximate result of Defendants' acts and omissions described in this

22  complaint, Plaintiffs have incurred attorney's fees, and will continue to incur additional attorney's

23  fees to protect and enforce their rights and pursuit of their constitutionally protected claims herein.

24  108.   The aforementioned acts and omissions of the individual Defendants were willful and

25  malicious and intended to oppress and cause injury to and fear in Plaintiff and deprive him of his

constitutional rights. Plaintiff is therefore entitled to an award of punitive damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants and as set forth above and below.

### SECOND CLAIM
### BATTERY
### (Against Defendants Fukuma, Krauss, and Santos and DOES -)

109.   The aforementioned allegations, and each of them, are incorporated into this claim, as though set forth in full herein.

110.   The above facts establish that defendants Fukuma, Krauss, and Santos and each of committed intentional acts that constitute a battery against Plaintiff Jessie Gomez, without lawful right and/or with malicious motive or discriminatory intent, and Defendants Fukuma, Krauss, and Santos intended to and did actually cause or place Plaintiff in apprehension or fear of harmful or violent physical contact with Plaintiff's person, which violent physical contact actually occurred, causing Plaintiff Jessie Gomez fear, apprehension, bodily injury, pain and suffering, mental anguish, humiliation, emotional distress and general and special damages subject to proof at trial.

111.   At no time did Plaintiff Jessie Gomez provoke or consent to the violent conduct of Defendants alleged above.

112.   Plaintiff is informed and believes and alleges the municipal Defendants are vicariously liable for and/or contributed to or are otherwise responsible or liable for the acts of the arresting officers committed during the course and scope of their employment.

113.   The aforementioned acts and omissions of the individual Defendants were willful and malicious and intended to oppress and cause injury to and fear in Plaintiff and deprive him of his constitutional rights. Plaintiff is therefore entitled to an award of punitive damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants and as set forth below.

///

///

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

1

## THIRD CLAIM
## FALSE ARREST & IMPRISONMENT & MALICIOUS PROSECUTION
### (Against Officer Defendants and the Municipal Defendants)

2

3    114.    The aforementioned allegations, and each of them, are incorporated into this claim, as

4    though set forth in full herein.

5    115.    The above facts establish that Defendants Fukuma, Krauss, and Santos and DOES 1-60 and

6    each of them are guilty of malice, fraud and oppression in causing them to be falsely arrested and

7    imprisoned Plaintiffs and criminally prosecuted for fabricated charges in violation of state law.

8    116.    Plaintiffs are informed and believe and allege the municipal Defendants contributed to or are

9    otherwise responsible or liable for the acts of the arresting officers as alleged in this claim.

10    117.    The acts of the arresting officers were willful, wanton, malicious, and oppressive, and

11    intended to deprive Plaintiff of his rights and justify the awarding of punitive and exemplary

12    damages.

13        WHEREFORE, Plaintiffs pray for judgment against Defendants and as set forth below.

## FOURTH CLAIM
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants including DOE Defendants)

14

15

16    118.    The aforementioned allegations, and each of them, are incorporated into this claim, as

17    though set forth in full herein.

18    119.    The Defendant officers engaged in a course of conduct alleged above that was violent,

19    insolent, outrageous, inexcusable, and/or willfully publicly and violently assaulting Plaintiff Jessie

20    Gomez, and purposefully implicating Plaintiff and arresting him as if he was a violent felon when

21    Plaintiff Jessie Gomez had committed no felony and posed no threat to officer safety, using painful

22    control holds and body strikes and other violence, including violently taking Plaintiff to the ground

23    when he was unarmed and posed no threat to officer safety, in front of his sister and then falsely

24    imprisoning and fabricating false criminal charges against Plaintiff and causing to be maintained a

25    false criminal complaint against him and the other wrongful acts and omissions alleged herein.

26

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd • Suite 110 • Los Gatos, CA 95032
Phone: 408.335.7368 • Fax: 408.402.8362

120.    The Defendant officers engaged in a course of conduct alleged above that was insolent, outrageous and inexcusable, and purposefully treating Plaintiff Cristela Gomez as though she was a criminal when she had committed no wrong and posed no threat to officer safety, using handcuffs and restraints on Plaintiff Cristela Gomez, and falsely imprisoning and fabricating false allegations against Plaintiff Cristela Gomez and causing her to be demeaned and imprisoned and criminally prosecuted and her rights to be violated in retaliation for her objections to the officers' misconduct and the other wrongful acts and omissions alleged herein.

121.    Defendant officers conduct was intentional and malicious and for the purpose of causing Plaintiffs to suffer humiliation, mental anguish, and emotional and physical distress. Defendant officers' conduct in confirming and ratifying that conduct was done with knowledge that plaintiffs' emotional and physical distress would thereby increase, and was done with a wanton and reckless disregard of the consequences to Plaintiffs.

122.    Defendants, as police officers, owe a duty of care to the public and citizens of the City of San Jose, including Plaintiffs, to exercise due care in the performance of their duties, including investigating, detaining, arresting, and otherwise interacting with citizens during the course of the investigation and in carrying out the acts alleged herein. Defendants negligently failed to exercise due care in performing the acts and omissions alleged herein and by failing to follow the laws, rules, and procedures designed to protect the public from overzealous or wrongful police misconduct.

123.    As the proximate result of the acts alleged above, Defendants caused Plaintiffs to suffer severe humiliation, mental anguish, and emotional and physical distress and bodily injury and has been injured in their minds.

124.    The acts of the individual Defendants alleged herein were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants and as set forth below.

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd • Suite 110 • Los Gatos, CA 95032
Phone: 408.335.7368 • Fax: 408.402.8362

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

**FIFTH CLAIM**
**NEGLIGENCE & NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(Against All Defendants including DOE Defendants)**

125.    The aforementioned allegations, and each of them, are incorporated into this claim, as though set forth in full herein.

126.    At all times relevant, Plaintiffs are informed and believe and thereon allege that unknown officers sued herein as DOE Defendants and the municipal Defendants were responsible for supervising and ordering and directing police units and peace officers to 1target young minority citizens including those of Hispanic race. 2These and other DOE Defendants are responsible for hiring, training, supervising, directing, retaining, ordering and disciplining Defendant officers and in such capacity did owe a duty of care to the public and citizens of the City of San Jose, including Plaintiffs, to properly hire, train, brief, supervise, direct, and order the arresting officers, and discipline Defendant police officers when they used excessive force or made false arrests or otherwise violated the rights of citizens, including Plaintiffs.

127.    The municipal defendants, Sgt Marfia and DOES 1-30 negligently failed to investigate the assaulting officers' use of force and failed to properly hire, train, brief, supervise, investigate,  and direct the activities of the named defendants and tolerated a systemic abuse of rights that has caused damage to Plaintiffs.

128.    Plaintiffs are informed and believe and thereon allege that from the facts alleged herein it may be inferred that the assaulting officers and Sgt. Marfia have previously engaged in a pattern or practice or history of violence or other police misconduct in violation of the rights of citizens and others, which placed their employer and supervising and higher ranking officers, including DOE defendants sued herein, on actual and/or constructive notice of the arresting officers' propensity for violence and unsuitability to serve as peace officers and defendants and each of them have negligently retained the assaulting officers and their Sgt. Marfia.

129.    Plaintiffs allege that the DOE Defendant officers and municipal Defendants were negligent in failing to exercise due care in hiring, training, briefing, supervising, directing, ordering, controlling and disciplining Defendant officers, both before and after October 25, 2008, and such negligence was the proximate cause of injury to Plaintiffs.

130.    At all times relevant, Defendant officers and their unknown supervising officers and the municipal Defendants owed a duty to the public and the citizens of the City of San Jose, including Plaintiffs, to exercise due care to avoid violating the rights of individuals and to avoid causing individuals injury, loss or damages during the course of a detention, arrest, imprisonment of, or filing charges against suspects. 3On or about October 25, 2008, these Defendants negligently and carelessly caused Plaintiffs to be injured by Defendants' acts and omissions alleged herein and by failing to exercise due care during the detention, arrest and imprisonment of and filing criminal charges against Plaintiffs.

131.    As a direct and proximate result of Defendants' acts and omissions described in this complaint, Plaintiffs have suffered and been subjected to fear, apprehension, bodily injury, pain and suffering, mental anguish, humiliation, demeaning incarceration procedures, emotional distress, loss of reputation, falsely accused of crimes they did not commit, loss of liberty and freedom, deprivation of federally protected constitutional rights, fear of other officers using excessive force against them in retaliation or due to the false impression created by the false criminal history now ascribed to Plaintiffs and which is now public record, and months of fear of future incarceration for false crimes charged by the arresting officers, and other special and general damages subject to proof at trial.

        WHEREFORE, Plaintiffs pray for judgment against Defendants and as set forth below.

///
///
///

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd • Suite 110 • Los Gatos, CA 95032
Phone: 408.335.7368 • Fax: 408.402.8362

1

**SIXTH CLAIM**
**VIOLATION OF PUBLIC POLICY & INTERFERENCE WITH RIGHTS**
**BY THREATS, INTIMIDATION OR COERCION**
**California Civil Code §52.1, §52.7**
**(Against All Defendants including DOE Defendants)**

132.   The aforementioned allegations, and each of them, are incorporated into this claim, as though set forth in full herein.

133.   It is a fundamental public policy of the State of California to protect all persons within this state from: (1) interference with their constitutional and civil rights by threats, intimidation, or coercion, and (2) discrimination based on race or perceived race, (3) violence inflicted upon them based on their exercise of constitutional or civil rights, and (4) violence inflicted upon them based on race or perceived race.

134.   Plaintiffs are members of this protected class of people and at all times alleged herein were entitled to be free from (1) interference with their constitutional and civil rights by threats, intimidation, or coercion, and (2) discrimination based on his race or perceived race, and (3) violence inflicted upon them based on his exercise of constitutional or civil rights, and (4) violence inflicted upon them based on their race or perceived race.

135.   Plaintiffs are members of a protected class, namely descendants of a person of Hispanic race, and as a person or descendant of a person of Hispanic race, Plaintiffs have the right to be free of violence committed against their person or property because of their race or perceived race.

136.   Defendants and each of them, as alleged in this complaint, violated fundamental public policy of this case by officially sanctioning and personally targeting Plaintiffs because of their race or perceived race and as against Plaintiffs used threats of violence, actual violence and brutality, intimidation, unlawful search and seizure, false arrest and imprisonment, illegal custodial interrogations, filing of false charges, coercion and other wrongful acts to interfere with Plaintiffs' federally protected First, Fourth, Fifth and Fourteenth Amendment rights in violation of fundamental public policy of this state and California Civil Code §52.1 and discriminated against

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

1   Plaintiffs and deprived them of equal protection under the law because of their race or ancestry or

2   perceived race or ancestry in violation of fundamental public policy of this state and California

3   Civil Code §52.7.

4   137.    As a proximate result of Defendants' interference with Plaintiffs' civil and constitutional

5   rights and deprivation of equal protection and violence against them because of their race or

6   perceived race, Plaintiffs have suffered general and special damages.

7   138.    As a proximate result of the wrongful act of Defendants alleged herein, Plaintiffs are, in

8   addition, entitled to recover statutory civil penalties of $25,000, as provided in California Civil

9   Code §52(b), for each violation.

10  139.    As a direct and proximate result of Defendants' acts and omissions described in this

11  complaint and interference with Plaintiffs' civil rights, Plaintiffs have incurred attorneys fees, and

12  will continue to incur additional attorney's fees in order to protect and enforce their rights and

13  pursuit of their constitutionally protected claims herein and are entitled to recover statutory

14  attorney's fees pursuant to California Civil Code §52.1(h).

15      WHEREFORE, Plaintiffs pray for judgment against Defendants and as set forth below.

16                          **SEVENTH CLAIM**
17  **CONSPIRACY TO VIOLATE PLAINTIFF'S RIGHTS, FABRICATE CHARGES,
    COVER-UP POLICE MISCONDUCT & OBSTRUCT JUSTICE**
18          **(Against All Defendants including DOE Defendants)**

19  140.    The aforementioned allegations, and each of them, are incorporated into this claim, as

20  though set forth in full herein.

21  141.    Plaintiffs are informed and believe and thereon allege that the individual defendants and

22  unknown DOE Defendants, and each of them, did agree and conspire together to violate Plaintiffs'

23  federal and state constitutional and civil rights and to commit other wrongful, criminal and tortious

24  acts against Plaintiffs in violation of state law, including those alleged above as well as a conspiracy

25

26

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

1   to engage in an official cover-up of Defendants' misconduct, violation of Plaintiffs' rights, and

2   other wrongful acts alleged herein.

3   142.    In furtherance of this conspiracy, Defendants and each of them did engage in affirmative

4   acts or omissions where they had a duty to act that violated Plaintiffs' constitutional and civil rights

5   and accomplished the unlawful purpose of the conspiracy, including but not limited to those facts

6   alleged above, as well as by falsifying facts and charges in their official police reports and by

7   causing to be filed and maintained false criminal complaints against Plaintiffs on alleged

8   misdemeanors they did not commit in the arresting officers' presence and for which the arresting

9   officers did not have a reasonable belief they committed and the arresting officers did not articulate

10  specific facts that would establish probable cause that Plaintiffs committed the crimes charged.

11  143.    In furtherance of the conspiracy and to accomplish the unlawful purpose of the conspiracy,

12  Defendants and each of them did engage in material omissions that constituted a direct violation and

13  breach of the duty Defendants owed Plaintiffs and the public. For example, the arresting officers

14  falsely and/or selectively reported the facts of this case in a self-serving manner in an attempt to

15  cover-up or justify or excuse the arresting officers' misconduct, while purposefully omitting

16  material or unfavorable facts from their reports that would establish the wrongs they committed,

17  when the arresting officers had a duty to prepare complete and accurate reports and all Defendants

18  had a duty to report the wrongdoing and crimes and excessive force of the other Defendants.

19  144.    In furtherance of this conspiracy, among other things, Defendants unlawfully arrested,

20  seized, interrogated and incarcerated Plaintiffs and unlawfully searched them and unlawfully

21  falsified criminal charges against him, maliciously and without warrant or order of commitment or

22  any other legal authority of any kind, when Plaintiffs had not committed any crime or public

23  offense. In furtherance of this conspiracy, Defendants publicly and falsely accused Plaintiffs of

24  committing criminal offenses that they did not commit, and which offenses had not occurred, nor

25  did Defendants have probable cause to believe that the offense had occurred or that Plaintiffs had

26

committed the offenses. Defendants did engage in a conspiracy to obstruct justice, destroy or suppress material evidence, and otherwise chill plaintiff's exercise of his rights.

145.    As a direct and proximate result of Defendants' acts and omissions described in this complaint, Plaintiffs have suffered and been subjected to fear, apprehension, bodily injury, pain and suffering, mental anguish, humiliation, demeaning incarceration procedures, emotional distress, loss of reputation, falsely accused of crimes he did not commit, loss of liberty and freedom, deprivation of federally protected constitutional rights, fear of other officers using  excessive force against them in retaliation or due to the false impression created by the false criminal history now ascribed to Plaintiffs and which is now public record, and months of fear of conviction and incarceration for false crimes charged by the arresting officers, and other special and general damages subject to proof at trial.

146.    Plaintiffs are informed and believe and allege the other Defendants contributed to or are otherwise responsible or liable for the acts of the arresting officers.

147.    The acts of the individual Defendants, as herein alleged, were willful, wanton, malicious, and oppressive, and justify the awarding of punitive and exemplary damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants and as set forth below.

**PRAYER**

WHEREFORE, Plaintiffs Jessie Gomez and Cristela Gomez pray for judgment in favor of Plaintiffs and against Defendants, and each of them, as follows:

1.  For compensatory damages as to all Defendants including DOES 1-60, in an amount to be determined according to proof at trial;

2.  For special damages alleged herein.

3.  For punitive damages as to the officer Defendants, Defendants DOES 1 through 10 and any of the DOE Defendants acting in concert with them;

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362

4.  For civil monetary penalties assessed pursuant to Cal. Civ. Code § 52(b) of $25,000 per violation;

5.  For reasonable attorney's fees as to all Defendants, pursuant to 42 U.S.C. § 1988 and California Civil Code §52.1(h) and as otherwise provided by law;

6.  That should this matter go to trial that it be tried to a jury of Plaintiffs' peers;

7.  For costs of suit incurred in this action as to all Defendants; and

8.  For such other and further relief as the Court deems proper.


Dated: January 03, 2011                    CANNISTRACI LAW FIRM

                                                /s/Sharonrose Cannistraci
                                   By: _____
                                          Sharonrose Cannistraci, Esq.
                                          Counsel for Plaintiffs

CANNISTRACI LAW FIRM
16450 Los Gatos Blvd ● Suite 110 ● Los Gatos, CA 95032
Phone: 408.335.7368 ● Fax: 408.402.8362